THE ATCHISON, TOPEKA & SANTA FE RAILWAY
COMPANY v. JOSEPH W. ARTHURS.

No. 12,353.    (65 Pac. 651.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury by Fire—Verdict Sustained.* Where the
evidence proved that three engines hauling separate trains passed
within a few minutes over a railway through a farm to which a
fire from the right of way was found by the jury to have escaped,
and where much of the testimony in the case tended to show that
the fire was set by the engine drawing the last train, and when
the jury, in answer to special questions, fully exonerated the rail-
way company from negligence in the operation of the engines
drawing the first two trains, but were not asked to make any find-
ings as to the condition or manner of managing the third engine,
and did not do so, and when, in such case, a general verdict was
rendered against the railway company, it will be presumed, in or-
der to sustain such verdict, that the jury based the same upon
the evidence relating to the last engine, and the action of the
trial court in refusing to render judgment on the special findings
in favor of the railway company, notwithstanding the general ver-
dict, will be upheld.

2. ——— *Injury to Things Attached to the Soil—Rule Fol-
lowed.* The rule laid down in the third paragraph of the sylla-
bus in *Railway Co. v. Lycan*, 57 Kan. 635, 47 Pac. 526, as to
the evidence of injury to particular things attached to the soil,
followed and applied, where the property injured was a hedge
fence and timothy meadow.

Error from Neosho district court; L. STILLWELL,
judge.    Opinion filed July 6, 1901.    Division two.
Affirmed.

STATEMENT.

THE defendant in error brought this action to re-
cover damages for the loss of property destroyed by
fire through the negligence of the railway company
and its employees in operating one of its freight-trains,
on the 17th day of November, 1897, on a division of
its road which runs through the farm of plaintiff

Railway Co. v. Arthurs.

below, near Chanute.    Many specific allegations of negligence were made in the petition, but the only ones necessary to be stated here are the following: (1) "That the defendant negligently used and employed in the operation of its said engine and train of cars unskilful and negligent employees"; (2) "that the engineer and fireman in charge of said engine were guilty of negligence in so firing and operating said engine as to cause the fire and sparks to escape through said netting and ash-pan and other appliances to prevent the escape of fire"; (3) the use of an engine having defective fire appliances.

The injury complained of occurred during a drought. There was a strong wind blowing from the south, and at the point where the fire was discovered there is an up grade in the track.    It is admitted that within a short time before the fire three freight-trains passed through Arthurs's premises, which were comparatively heavy, though not inordinately so.   Soon after the last train passed, Arthurs's employees noticed a fire on the right of way, and, going there quickly, attempted to extinguish it.    Upon their arrival on the scene, or soon afterward, they found two separate fires, the section men of the company being engaged in trying to put out one of them.    Although these fires did not come together, both escaped from the right of way and went upon Arthurs's premises.    Upon the trial of the case, the jury allowed him $370 for damages to about 400 rods of hedge fence, $300 for about 80 acres of timothy meadow, and $30 for sundry other items, making a total of $700.    It is not claimed that the damages were excessive in any particular, or that the several items thereof were not fully sustained by the evidence.

The specifications of error alleged by the railway

company, so far as they will be referred to in the opinion, are that the trial court erred : (1) In admitting certain illegal and incompetent testimony ; (2) in giving to the jury certain improper instructions ; and (3) in overruling the motion of the railway company for judgment in its favor on the findings of fact, notwithstanding the general verdict to the contrary.

Upon a verdict and the rendition of judgment against it, and a denial of its motion for a new trial, the railway company brings the case here for review.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*W. J. Walker,* and *J. B. F. Cates,* for defendant in error.

The opinion of the court was delivered by

ELLIS, J. : It is insisted that the trial court erred in permitting the counsel for plaintiff below to elicit from Mr. Heller, an engineer, upon cross-examination, the following testimony :

"Ques. You may state whether or not these engines are not fired up with wood when they begin to make fires in the engines. Ans. They put some kind of wood in, enough to get the fire started, and then they put in coal. .

"Q. Well, now, when wood is mixed in with the coal, the fire is more liable to escape—it is more liable to emit sparks when fired with coal and wood than when fired with coal? A. Yes, sir ; if—but we did not get right out of the yard ; it was quite a while after she was fired up.

"Q. Well, your engines were handled in that way, and made ready for them to start ? A. Yes, sir."

By this witness and others, the railway company had shown that its engines were fired with Frontenac coal,

and upon his direct examination this witness had testified, at the instance of the company's counsel, as follows :

"Ques. Now, you may state to the jury when you are using coal — Frontenac coal — and these particles are thrown from the smoke-stack, if they ignite immediately, or how ? Ans. If they don't start a fire as soon as they hit, they don't start at all, because they are red-hot when they first strike, and, of course, if they do not start when they come down red-hot, they do not start at all."

This testimony was evidently offered by the railway company for the purpose of showing due care in the selection of its fuel, and also to prove that one or both of the fires could not have been started by the engines drawing the first two trains without being discovered earlier. Whether those were the objects sought to be attained by the testimony or not, the cross-examination was pertinent to the statement made in the direct examination, and to permit the witness thus to be cross-examined was not error.

It is also urged that the court below erred in permitting witnesses to testify as to the value of the hedge and meadow, and it is claimed that the measure of damages in such case is the difference in the value of the land before and after the fire, wherefore, the testimony of witnesses should have been confined to that subject. It will suffice to say that the testimony complained of was admitted by the trial court without objection, and that the point above suggested does not appear by the record to have been raised at all in the court below. However, the course pursued in the admission of evidence and in giving instructions to the jury was not violative of the rule laid

down in the case of *Railway Co. v. Lycan*, 57 Kan. 635,. 47 Pac. 526, as follows :

" In such an action, evidence as to the value of the trees while growing on the land and as a part of it, is competent for the purpose of showing the amount of the plaintiff's damages. Where a particular thing attached to the soil, and therefore a part of the realty,. but which has a distinct value as such, susceptible of definite measurement, is injured or destroyed, the evidence in an action to recover damages therefor may properly be directed to the value of such specific thing as a part of the land, and in actions of this kind is ordinarily the best and most satisfactory evidence. It is only where the damages to one part of the land affect other parts, and are incapable of more definite and direct proof, that the evidence is necessarily confined to proof of the value of the whole tract before and after the injury, though the actual damages can never, in any case, exceed the difference between such values.''

In the case of *Railroad Co. v. Owens*, 6 Kan. App. 515, 50 Pac. 962, the above rule enunciated by this court was directly applied " to proof of value of hedge fence and clover-field destroyed by fire resulting from negligence of a railroad company.''

The instructions complained of relate to the making out of a *prima facie* case by the landowner against the railway company, and are clearly authorized by the decision in the case of *A. T. & S. F. Rld. Co. v. Gibson*, 42 Kan. 34, 21 Pac. 788.

The jury returned answers to eighteen special questions of fact, sixteen of which related to the condition and management of two of the engines and the competency of and degree of care exercised by the engineers and firemen operating the same, and therein they found that the said engines were supplied with approved appliances, had been inspected only a short time before the fire, that no repairs were made upon

Railway Co. v. Arthurs.

either of them at the time of the next inspection, and that the engineers and firemen were competent, and carefully and skilfully managed and operated them at the time of passing the place where the fires occurred. Upon these findings of the jury, the plaintiff in error based its motion for judgment notwithstanding the general verdict, and of the refusal of the trial court to sustain the motion it here complains.

The questions and answers of the jury above referred to relate solely to the engines drawing the first two trains, on the day that the fires occurred, and although the engineer of the last engine, Mr. Heller, testified that he saw a fire on the right of way about a half-mile from Chanute, no attempt was made to identify that fire as one of those which did the injury to the premises of plaintiff below, and indeed much of the evidence supported the contention of Arthurs's counsel, that the fires causing such injury were set out by the engine drawing the third train, and the jury undoubtedly adopted that theory. In this court, counsel for plaintiff in error argue the case as though such findings related to all three of the engines and their crews. They say that the jury found that "the three engines passing at and before the fire were perfect engines and in good condition." Again they say:

"These findings show that not only one engine but all three of the engines which passed the place at the time of the fire were provided with the most-approved appliances to prevent the escape of fire; that the ash-pan, stack and netting at that time were in good condition; that no repairs of any kind had been made upon the netting, dampers, or ash-pan, nor was there any necessity therefor; that all of the engineers and firemen operating the engines were competent and skilful employees, and were carefully and skilfully managing the engines at the time they passed the

plaintiff's premises. These findings fully and completely exonerate the company from any negligence in the premises.''

Based upon these propositions, counsel for the company make an able and exhaustive argument, proving, quite clearly, that the court erred in overruling their motion for judgment. Indeed, the only criticism that can well be made of the argument is that its premises are not true. In explanation of this conduct on the part of counsel, it ought to be said that those who present the case here were not present at the trial in the court below, and, therefore, doubtless have been misled by the fact that the record in one place gives a wrong number of one of the engines, namely, 76, when 78 was intended. Such error clearly appears when the findings themselves are carefully perused, and an examination of the evidence itself proves beyond doubt that the findings relate, as the evidence did, to engines numbered 78 and 118, while the only important evidence in relation to No. 83, which drew the last train, was that of the engineer, Heller, who testified that it had been out of repair the day before the fire ; that it had been throwing fire ; that its draft was too strong ; that he reported its condition, and that when he received it on the morning of November 17 he inferred that the requisite repairs had been made because its draft had been reduced, but that he made no examination to learn the extent of such repairs. The evidence did not show anything as to the qualifications of the fireman on that engine, nor how the engine was operated past the farm of the plaintiff in error, and a significant fact which doubtless impressed the jury was that, while the inspector who examined the other two engines was placed upon the witness-stand to show their condition before and after

the fire, the inspector who examined engine No. 83, and should have caused it to be repaired the day before the fire, although shown to be still in the employ of the company, was not produced as a witness at all.

It is evident that the counsel for the railway company who present the case here have, while acting in entire good faith, failed to examine the case critically and discover this variance between the facts shown in the record and the statements and arguments contained in their brief. The other two findings of the jury sustain the verdict, and as no questions were propounded to them touching the state or manner of control of the engine hauling the last train, the sixteen findings in regard to the other engines and crews were unimportant.

The other matters referred to in the brief of plaintiff in error do not appear to us to be of sufficient moment to require a reversal of the judgment, which, for the foregoing reasons, is affirmed.

SMITH, CUNNINGHAM, JJ., concurring.